IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 97-30545

_____

KAREN M. USSERY,

Plaintiff-Appellee,

versus

STATE OF LOUISIANA, on behalf of
Louisiana Department of Health and
Hospitals; PINECREST DEVELOPMENTAL
CENTER; RODNEY RICHMOND,

Defendants,

STATE OF LOUISIANA, on behalf of
Louisiana Department of Health and
Hospitals,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Western District of Louisiana
_____

August 5, 1998

Before DUHÉ, BENAVIDES, and STEWART, Circuit Judges.

BENAVIDES, Circuit Judge:

The appellant, the State of Louisiana, brings this interlocutory appeal challenging the district court's denial of its motion for summary judgment, in which the State argued that that the plaintiff's claims against it under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, and the Equal Pay Act of 1963 ("EPA"), as amended, 29 U.S.C. § 206(d), were barred by the Eleventh Amendment. For the reasons set forth below, we AFFIRM.

## Background

On November 17, 1995, Karen M. Ussery, a state employee at the Pinecrest Developmental Center in Pineville, Louisiana, filed suit against the State of Louisiana through the Department of Health and Hospitals, Pinecrest Developmental Center, and Rodney Richmond, alleging claims under Title VII, the EPA, and state law. Ms. Ussery alleged that she was retaliated against for filing a prior EEOC complaint, that two employment practices related to the attainment of her master's degree violated the EPA, that the defendants violated La. R.S. 23:1006 and La. R.S. 51:2231, and that Rodney Richmond intentionally inflicted emotional distress on her.

On March 13, 1997, the State of Louisiana moved for summary judgment, arguing that plaintiff's claims against it were barred by the Eleventh Amendment and that the claims failed as a matter of law. On April 25, 1997, the district court denied the State's motion for summary judgment on the basis of Eleventh Amendment immunity as to the plaintiff's Title VII and EPA claims, denied the State's motion for summary judgment on the merits as to the plaintiff's Title VII and EPA claims, granted the State summary judgment as to plaintiff's state law claims, and granted defendant Richmond summary judgment as to plaintiff's state law claims against him. On May 23, 1997, the State filed a timely notice of appeal. This court has jurisdiction under the collateral order doctrine over only the State's argument that the plaintiff's claims under Title VII and the EPA are barred by the Eleventh Amendment. See Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy,

<u>Inc.</u>, 506 U.S. 139, 146-47, 113 S. Ct. 684, 689 (1993).[1]


<u>Standard of Review</u>

Whether a state is entitled to Eleventh Amendment immunity is a question of law which this court reviews <u>de novo</u>. <u>See</u> <u>Stine v. Marathon Oil Co.</u>, 976 F.2d 254, 259 (5th Cir. 1992).


<u>Discussion</u>

In general, the Eleventh Amendment bars all persons from suing a State for money damages in federal court. <u>See</u> U.S. Const. amend. XI; <u>Seminole Tribe v. Florida</u>, 517 U.S. 44, 54, 116 S. Ct. 1114, 1122 (1996). Of course, this bar is not absolute: a State may consent to suit or Congress may abrogate the States' Eleventh Amendment immunity. <u>See</u> <u>Port Auth. Trans-Hudson Corp. v. Feeney</u>, 495 U.S. 299, 304, 110 S. Ct. 1868, 1872 (1990). In this case, it is clear that the State of Louisiana has not consented to be sued in federal court. <u>See</u> La. R.S. 13:5106; <u>Delahoussaye v. City of New Iberia</u>, 937 F.2d 144, 147 (5th Cir. 1991). Thus, the sole question before the court is whether Congress abrogated the States' Eleventh Amendment immunity when it amended Title VII and the EPA.

In <u>Seminole Tribe</u>, the Supreme Court set forth a two-part test for determining whether Congress has properly abrogated the States' Eleventh Amendment immunity. First, the court must determine

---

[1] In her response brief, Ms. Ussery argues that she has set forth a prima facie case under both Title VII and the EPA. Because this matter is before this court on interlocutory appeal for the limited purpose of determining whether the State of Louisiana is entitled to Eleventh Amendment immunity, the merits of Ms. Ussery's claims are not before the court.

whether Congress "unequivocally expresse[d] its intent to abrogate the immunity." 517 U.S. at 55, 116 S. Ct. at 1123 (quotation omitted). This intent to abrogate must be expressed "in unmistakable language in the statute itself." Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 243, 105 S. Ct. 3142, 3148 (1985). Second, the court must determine whether Congress acted "pursuant to a valid exercise of power." Seminole Tribe, 517 U.S. at 55, 116 S. Ct. at 1123 (quotation omitted). In Seminole Tribe, the Court reaffirmed its previous holding that Congress can abrogate the States' Eleventh Amendment immunity when it enacts legislation pursuant to § 5 of the Fourteenth Amendment. See id. at 59, 116 S. Ct. at 1125.

## A.   Title VII

The State first argues that Congress has not sufficiently stated its intent to abrogate the States' Eleventh Amendment immunity with respect to Title VII. In Fitzpatrick v. Bitzer, however, the Supreme Court specifically held that "in the 1972 Amendments to Title VII of the Civil Rights Act of 1964, Congress, acting under Section 5 of the Fourteenth Amendment, authorized federal courts to award money damages in favor of a private individual against a state government found to have subjected that person to employment discrimination on the basis of race, color, religion, sex, or national origin." 427 U.S. 445, 447 96 S. Ct. 2666, 2667-68 (1976). Since Fitzpatrick, this court has repeatedly held that Title VII clearly abrogated the States' Eleventh

Amendment immunity.  E.g., Peques v. Mississippi State Employment Serv., 899 F.2d 1449, 1453 (5th Cir. 1990); Whiting v. Jackson State Univ., 616 F.2d 116, 127 n.8 (5th Cir. 1980).

Nonetheless, the State argues that, despite the clear language in Fitzpatrick and this court's subsequent cases, none of these cases has really addressed whether Title VII contains the unmistakable congressional waiver of the States' Eleventh Amendment immunity required by the Supreme Court in Atascadero, which was decided some nine (9) years after Fitzpatrick.  According to the State, under Atascadero, in order for Congress to validly abrogate the States' Eleventh Amendment immunity, it must make an express statement of such an intent in the text of the statute using the words "States," "Eleventh Amendment immunity," or "sovereign immunity."  The courts, however, have never required that Congress express this intent using the magic language suggested by the State.  Instead, Atascadero requires only that Congress express its intent to abrogate the States' Eleventh Amendment immunity "in unmistakable language in the statute itself."  472 U.S. at 243, 105 S. Ct. at 3148.  As the Court recognized in Fitzpatrick, Congress made its intent to abrogate the States' Eleventh Amendment immunity unmistakably clear when it amended Title VII's definition of "person" to include governments, governmental agencies, and political subdivisions, 42 U.S.C. § 2000e(a), and simultaneously amended the definition of employee to include individuals "subject to the civil service laws of a State government, government agency, or political subdivision," 42 U.S.C. § 2000e(f).  See Fitzpatrick,

427 U.S. at 449 n.2, 96 S. Ct. at 2668 n.2. Accordingly, the State's argument to the contrary is unavailing.


B. Equal Pay Act

The Equal Pay Act of 1963, as amended, 29 U.S.C. § 206(d), was enacted by Congress as an amendment to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219. In short, the EPA requires that all persons performing equal work must receive equal pay, unless a difference in pay is justified by a consideration other than gender. "As with many civil rights statutes, the Equal Pay Act initially applied only to private employers. In 1974, however, Congress extended the Act to include the States [as employers]." Timmer v. Michigan Dep't of Commerce, 104 F.3d 833, 837 (6th Cir. 1997) (citations omitted).


1. Intent to Abrogate

On appeal, the State wisely does not contest the district court's conclusion that Congress expressed its intent to abrogate the States' Eleventh Amendment immunity in "unmistakable language" in the EPA itself. The private enforcement provision of the FLSA, of which the EPA is a part, provides that "[a]n action to recover the liability prescribed . . . may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). The term "employer" is defined in

- 6 -

the FLSA to include "a public agency," 29 U.S.C. § 203(d), which is in turn defined as "the government of a State or political subdivision thereof" and any agency of a State, 29 U.S.C. § 203(x). Finally, the term "employee" is defined to include "any individual employed by a State, political subdivision of a State, or an interstate governmental agency."  29 U.S.C. § 203(e)(2)(C).

Given the plain language of the statute, the five courts of appeals that have addressed the issue have held that the definitional and enforcement provisions in the EPA contain the necessary "clear statement" of Congress's intent to abrogate the States' Eleventh Amendment immunity.  See Timmer, 104 F.3d at 837-38 (6th Cir. 1997); see also Mills v. Maine, 118 F.3d 37, 42 (1st Cir. 1997) (involving an Eleventh Amendment challenge to the overtime and minimum wage provisions of the FLSA); Brinkman v. Department of Corrections, 21 F.3d 370, 372 (10th Cir. 1994) (same); Reich v. New York, 3 F.3d 581, 590-91 (2d Cir. 1993) (same); Hale v. Arizona, 993 F.2d 1387, 1391-92 (9th Cir. 1993) (en banc) (same).  We now join our sister circuits in reaching the same conclusion.


2.  Power to Abrogate

We turn next to the question of whether Congress acted "pursuant to a constitutional provision granting Congress the power to abrogate."  Seminole Tribe, 517 U.S. at 58, 116 S. Ct. at 1125. Because it is well settled that "the constitutionality of action taken by Congress does not depend on recitals of the power which it

undertakes to exercise," Woods v. Cloyd W. Miller Co., 333 U.S. 138, 144, 68 S. Ct. 421, 424 (1948); accord EEOC v. Wyoming, 460 U.S. 226, 243-44 n.18, 103 S. Ct. 1054, 1064 n.18 (1983) (dicta), we agree with the Eighth Circuit that Seminole Tribe "requires us to make an objective inquiry, namely whether Congress could have enacted the legislation at issue pursuant to a constitutional provision granting it the power to abrogate.  As long as Congress had such authority as an objective matter, whether it also had the specific intent to legislate pursuant to that authority is irrelevant." Crawford v. Davis, 109 F.3d 1281 (8th Cir. 1997).[2] In this case, the sole constitutional basis upon which Congress could have abrogated the States' Eleventh Amendment immunity is § 5 of the Fourteenth Amendment.  See Seminole Tribe, 517 U.S. at 59, 116 S. Ct. at 1125.

Relying on the Supreme Court's decision in Pennhurst State School & Hospital v. Halderman, 451 U.S. 1, 101 S. Ct. 1531 (1981), however, the State argues that this general rule of judicial review is inapplicable when Congress acts pursuant to § 5 of the

_____

[2] Given the objective nature of our judicial review, the State's cursory argument that the statutory text and legislative history of the 1974 Amendments to the EPA support a finding that Congress was acting pursuant to the interstate commerce clause when it made those amendments is immaterial.  Moreover, to the extent that the State relies on Congress's statement that it was acting pursuant to the commerce clause in the original act, this argument is entirely unpersuasive.  As the Sixth Circuit noted in Timmer, the 1974 Amendments were a separate statute, and we must examine that statute and its legislative history to determine if Congress stated its intent to legislate under any particular constitutional provision.  See Timmer, 104 F.3d at 838 n.7.  To the extent that the State relies on the legislative history of the 1974 amendments, the State points to no specific portion of the legislative history in support of its position; and, after scouring the legislative history of the 1974 amendments, we find no definitive statement by Congress as to the Constitutional authority by which it acted. For a more detailed discussion of what the legislative history shows, see Timmer, 104 F.3d at 838 n.7.

Fourteenth Amendment.  According to the State, <u>Pennhurst</u> requires that, in order for abrogation to be complete, Congress must specifically state that it is acting pursuant to § 5 of the Fourteenth Amendment.  We disagree.

In <u>Pennhurst</u>, the Court addressed whether Congress intended the Developmentally Disabled Assistance and Bill of Rights Act of 1975, 42 U.S.C. §§ 6000 <u>et seq.</u>, to "impose[] an obligation on the States to provide, at their own expense, certain kinds of [medical] treatment."  <u>Id.</u> at 15, 101 S. Ct. at 1538.  In the course of "discerning congressional intent," the Court examined "the possible sources of Congress' power to legislate," including § 5 of the Fourteenth Amendment.  <u>Id.</u> at 15, 101 S. Ct. at 1538-39.  With respect to § 5, the Court, recognizing the federalism concerns involved in inferring such an intent into an ambiguous statute, stated: "Because such legislation imposes congressional policy on a State involuntarily, and because it often intrudes on traditional state authority, we should not quickly attribute to Congress an unstated intent to act under its authority to enforce the Fourteenth Amendment."  <u>Id.</u> at 16, 101 S. Ct. at 1539.  Finding no support for the lower court's finding that Congress acted pursuant to § 5, the Court concluded that Congress did not intend to impose such financial obligations upon the States pursuant to § 5.

Although facially appealing, the State's reliance on <u>Pennhurst</u> is misplaced.  Unlike the case at hand, the Court in <u>Pennhurst</u> "was resolving an issue of statutory construction, not . . . a question of Congressional authority to legislate."  <u>EEOC v. Elrod</u>, 674 F.2d

601, 609 n.8; accord EEOC v. Wyoming, 460 U.S. 226, 103 S. Ct. 1054 (1983)(stating, albeit in dicta, that "[o]ur task in Pennhurst [] was to construe a statute, not to adjudge its constitutional validity") (quotations and internal citations omitted).  In other words, Pennhurst addressed whether Congress intended to alter the traditional federal-state balance, not whether Congress had the authority to do so once it has already unambiguously stated its intent to alter that balance.  As the Court later stated in Gregory v. Ashcroft, the Pennhurst rule is a "rule of statutory construction to be applied where statutory intent is ambiguous." 501 U.S. 452, 470, 111 S. Ct. 2395, 2406 (1991).  Under the first prong of Seminole Tribe, however, Congress must unambiguously state its intent to abrogate the States' Eleventh Amendment immunity in the language of the statute itself.  See Seminole Tribe, 517 U.S. at 55, 116 S. Ct. at 1123.  Given this requirement, we see no persuasive reasons why we should abandon the general rule of judicial review and require that Congress reaffirm that intent under the second prong of Seminole Tribe by stating that it is abrogating the States' Eleventh Amendment immunity pursuant to § 5 of the Fourteenth Amendment.

Thus, we return to the question of whether Congress could have, as an objective matter, amended the EPA to apply to the States as employers pursuant to § 5 of the Fourteenth Amendment. We need not be detained for long.  Section 5 of the Fourteenth Amendment grants Congress broad authority to enforce the amendment's substantive provisions "by appropriate legislation."

U.S. Const. amend. XIV, § 5.  In its simplest terms, the EPA is designed to eliminate discrimination in pay and other employment benefits based on an employee's gender.  By amending the EPA to include the States as employers, Congress sought to eliminate such discrimination by the States themselves.  Because it goes without saying that the substsantive provisions of the Fourteenth Amendment prohibit the States from discriminating on the basis of gender, "we are unable to understand how a statute enacted specifically to combat such discrimination could fall outside the authority granted to Congress by § 5."  Crawford, 109 F.3d at 1283.[3]

---

[3]  Even assuming that Pennhurst affects the Seminole analysis in some manner, contrary to what the State implies, the specific language of Pennhurst would not require that Congress expressly state that it was acting pursuant to § 5 of the Fourteenth Amendment.  As the Sixth Circuit noted in Timmer,

> First, the so-called "Pennhurst rule" says only that a court should not "quickly attribute" to Congress an unstated intent to act pursuant to § 5. Id. (emphasis added).  This suggests only that a court should carefully consider the propriety and effect of concluding that Congress has acted pursuant to § 5.  Second, the Court went on to distinguish between two kinds of cases:  those where "statutes ... simply prohibited certain kinds of state conduct" and those like the one before the Court in Pennhurst, where the "case for inferring intent is at its weakest where ... the rights asserted impose affirmative obligations on the States to fund certain services, since we may assume that Congress will not implicitly attempt to impose massive financial obligations on the States." Id. at 16-17, 101 S.Ct. at 1539-40.  In other words, the Court did not suggest that a court should never infer a congressional intent to legislate pursuant to § 5 of the Fourteenth Amendment, but rather that it should first consider a number of factors before making such an inference.  In addition, while the cases cited by the Court involved statutes in which Congress had expressly stated an intent to legislate pursuant to § 5, and as such were "consistent" with the Pennhurst rule, see id. at 16, 101 S.Ct. at 1539, the Court did not suggest that these cases excluded the possibility of inferring intent in appropriate circumstances.

104 F.3d at 840-41.

For these reasons, we conclude that, even assuming that we were to agree with the State that Pennhurst affects the Seminole Tribe analysis in some fashion, we would nonetheless reject the State's proposed reading that Congress must expressly state that it is acting pursuant to § 5 of the Fourteenth Amendment.  Moreover, even if we were to apply a so-called "Pennhurst proceed-with-caution" rule, we would nonetheless hold that Congress properly abrogated the States' Eleventh Amendment immunity when it amended the EPA in 1974.

## Conclusion

For the reasons set forth above, we conclude that Congress abrogated the States' Eleventh Amendment immunity when it extended both Title VII and the EPA to the States as employers. Consequently, the decision of the district court is AFFIRMED, and this case is REMANDED to the district court for further proceedings.