# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-2706

_____

| | | |
|---|---|---|
| Katherine S. O'Sullivan, | * | |
| | * | |
| Appellant, | * | |
| | * | |
| v. | * | |
| | * | |
| State of Minnesota; Minnesota State | * | Appeal from the United States |
| Colleges and University System, | * | District Court for the District |
| (MnSCU); Lake Superior College, | * | of Minnesota. |
| formerly known as Duluth Technical | * | |
| College; Carole Erickson, personal | * | |
| representative of the estate of | * | |
| Dr. Harold Erickson, | * | |
| | * | |
| Appellees. | * | |

_____

Submitted: May 13, 1999
Filed: September 15, 1999

_____

Before McMILLIAN, BRIGHT, and FAGG, Circuit Judges.

_____

FAGG, Circuit Judge.

Katherine S. O'Sullivan was laid off from her job as the women's resource center director and gender equity coordinator for Lake Superior College (LSC), a member of the Minnesota State Colleges and University System (MnSCU), a state agency consolidating all state universities, community colleges, and technical colleges.

Following her layoff, O'Sullivan brought this lawsuit against the State of Minnesota, MnSCU, LSC (collectively the State defendants), and LSC's former president, Dr. Harold Erickson, in his individual capacity. O'Sullivan's complaint alleged the defendants violated the Equal Pay Act (EPA), see 29 U.S.C. § 206(d) (1994), violated her right to free speech, and discriminated against her on the basis of gender, see 42 U.S.C. §§ 2000e through 2000e-17 (1994) (Title VII). Following extensive discovery, the defendants moved for partial dismissal and summary judgment. The district court granted the motion, holding the Eleventh Amendment bars the EPA claim against the State defendants, qualified immunity shields Dr. Erickson from the free speech claim, and O'Sullivan's failure to show pretext dooms her Title VII claims. After O'Sullivan filed her notice of appeal, Dr. Erickson died, and we substitute his personal representative as a party to the appeal at her request. See Fed. R. App. P. 43(a)(1). We affirm in part, reverse in part, and remand for further proceedings.

O'Sullivan first contends the district court erroneously held the Eleventh Amendment bars her EPA claims against the State defendants in federal court. Under the Eleventh Amendment, states are immune from federal lawsuits unless the state consents or Congress abrogates the states' immunity. See Seminole Tribe v. Florida, 517 U.S. 44, 54-55 (1996). Minnesota has not consented to this lawsuit, so we must decide whether Congress effectively destroyed the states' sovereign immunity when it enacted the EPA. To make this decision, we consider "whether Congress has 'unequivocally expresse[d] its intent to abrogate the immunity,'" id. at 55 (quoting Green v. Mansour, 474 U.S. 64, 68 (1985)), and whether Congress has acted "pursuant to a constitutional provision granting Congress the power to abrogate," id. at 59. Congress may use its enforcement power in § 5 of the Fourteenth Amendment to nullify state immunity. See id.

We join every court of appeals that has decided the issue and hold Congress properly abrogated the states' sovereign immunity when it enacted the EPA. See Anderson v. State Univ. of N.Y., 169 F.3d 117, 118 (2d Cir. 1999) (per curiam), pet.

for cert. filed, No. 98-1845 (U.S. May 17, 1999); Ussery v. State of La., 150 F.3d 431, 437 (5th Cir. 1998); Varner v. Illinois State Univ., 150 F.3d 706, 717 (7th Cir. 1998), pet. for cert. filed, 67 U.S.L.W. 3469 (U.S. Jan. 11, 1999) (No. 98-1117); Timmer v. Michigan Dep't of Commerce, 104 F.3d 833, 842 (6th Cir. 1997).  First, Congress unequivocally expressed its intent to abrogate the states' immunity.  See Ussery, 150 F.3d at 435; Varner, 150 F.3d at 709-11; Timmer, 104 F.3d at 837-38.  Second, Congress acted under a valid exercise of power found in § 5 of the Fourteenth Amendment.  See Anderson, 169 F.3d at 120-21; Ussery, 150 F.3d at 436-37; Varner, 150 F.3d at 711-17; Timmer, 104 F.3d at 838-42.  Although we have held Congress lacks Fourteenth Amendment power to abrogate a state's sovereign immunity for lawsuits seeking unpaid overtime under the Fair Labor Standards Act (FLSA), we left "for another day the issue of whether the Fourteenth Amendment gives Congress the power to override a state's Eleventh Amendment immunity for violations of the FLSA's equal pay provisions." Raper v. Iowa, 115 F.3d 623, 624 (8th Cir. 1997).  The State defendants argue the EPA cannot be justified as an exercise of Fourteenth Amendment power because the Act is substantive rather than remedial legislation.   See City of Boerne v. Flores, 521 U.S. 507, 519 (1997) (Congress's power under § 5 of the Fourteenth Amendment is remedial, not substantive).  We disagree.  Even though the EPA does not require an employee to show purposeful discrimination to recover, the Act is remedial rather than substantive legislation. See Anderson, 169 F.3d at 120-21; Varner, 150 F.3d at 716.   We thus conclude the district court improperly dismissed O'Sullivan's EPA claim against the State defendants.

The State defendants contend that even if O'Sullivan's EPA claim is not barred by the Eleventh Amendment, O'Sullivan cannot assert a prima facie case.  Because the district court did not reach the merits of O'Sullivan's EPA claim, we remand for the district court to do so.

O'Sullivan next asserts the district court should not have granted Dr. Erickson summary judgment on her First Amendment claim brought under 42 U.S.C. § 1983.

According to O'Sullivan, she complained to the administration that federal grant dollars were not being spent lawfully on gender equity programs in accordance with the grants' purposes, and that LSC was discriminating against her based on her gender because increased grant funds were not used to increase her salary. O'Sullivan asserts she was laid off for voicing these complaints.

We review the grant of summary judgment de novo. See Spitzmiller v. Hawkins, No. 98-4053, 1999 WL 639824, at *1 (8th Cir. Aug. 24, 1999). Summary judgment is proper when the evidence, viewed in the light most favorable to the nonmoving party, shows there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See id. To state a First Amendment claim under 42 U.S.C. § 1983, O'Sullivan must show her speech concerned matters protected by the First Amendment and the protected speech was a substantial factor in the layoff decision. See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977); Spitzmiller, 1999 WL 639824, at *1.

O'Sullivan failed to present enough evidence to support an inference that her speech was a substantial factor in Dr. Erickson's decision to lay her off. O'Sullivan was orally notified of her layoff by her immediate supervisor, Lenee Ross, on August 16, 1995. Ross made the layoff decision and Dr. Erickson ratified it. O'Sullivan could not specifically identify any dates when she raised concerns about the grants, but she said she thought she raised them in the springs of 1993, 1994, and 1995. O'Sullivan complained about improper grant spending to Ross, LSC's vice president of student services, Richard Halvorsen, the vice president of finance, Halvorsen's assistant Wendy Summers, and State Equity Coordinator Shirlee Walker. O'Sullivan only complained once to Dr. Erickson and her complaint was limited to Halvorsen's failure to approve an equipment request. Dr. Erickson responded immediately by ordering the equipment O'Sullivan wanted. O'Sullivan did tell the college's equity committee about the missing funds, and Dr. Erickson was a member of that committee, but there is no evidence Dr. Erickson attended the meetings where O'Sullivan raised her concerns and

O'Sullivan does not allege the meetings' minutes contained a reference to her funding concerns.

In any event, LSC's rehiring of O'Sullivan soon after her layoff removes any inference of causation between her speech and the decision to lay her off. See Spitzmiller, 1999 WL 639824, at * 2. Dr. Erickson rehired O'Sullivan to teach at LSC for each quarter beginning in the winter of 1995, and O'Sullivan was employed there until January 1997 when she quit to take other full-time employment. Absent sufficient evidence to support an inference that O'Sullivan's speech was a substantial factor in Dr. Erickson's decision to lay her off, we conclude Dr. Erickson is entitled to summary judgment on the merits of O'Sullivan's First Amendment claim. Having reached this conclusion, we need not resolve whether Dr. Erickson was entitled to qualified immunity on the claim.

O'Sullivan last contends the district court erroneously granted summary judgment on her Title VII claims. These claims are governed by the familiar analytical framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973). O'Sullivan must first present enough evidence to establish a prima facie case of gender discrimination, which creates a legal presumption of unlawful discrimination. See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506 (1993). The burden of production then shifts to the defendants to articulate a legitimate, nondiscriminatory reason for O'Sullivan's layoff. See id. at 506-07. After the defendants meet this burden, the presumption of discrimination drops from the case. See id. at 507. The burden of production then shifts back to O'Sullivan to show that the proffered reason is not the true reason and that her gender was. See id. at 507-08; Carter v. St. Louis Univ., 167 F.3d 398, 401 (8th Cir. 1999).

Assuming without deciding that O'Sullivan established a prima facie case, her Title VII claims fail at the third stage of the McDonnell Douglas framework. To avoid summary judgment at that stage, O'Sullivan must establish the existence of facts which

if proven at trial would permit a jury to conclude both that LSC's proffered reason is false and that intentional discrimination was the true reason for LSC's actions. See Carter, 167 F.3d at 401; Johnson v. Baptist Med. Ctr., 97 F.3d 1070, 1073 (8th Cir. 1996). LSC's reason for laying off O'Sullivan was a significant budget shortfall anticipated by the college. Budgetary and labor management considerations are legitimate, nondiscriminatory reasons for layoff decisions. O'Sullivan contends this reason is pretextual and mainly points to evidence that budgetary restraints may not have been the real reason for her layoff. Among other things, O'Sullivan disputes LSC's budget shortfall, asserts her position was funded with federal grant money that had already been approved for the next year, and contends LSC hired new personnel in the fall of 1995.

Even if we agreed with O'Sullivan that LSC did not convey the true reason for her layoff, summary judgment is still proper. To survive summary judgment, O'Sullivan must show the proffered reason for her layoff was a pretext for gender discrimination. See Hicks, 509 U.S. at 515. To make this showing, O'Sullivan must establish both that the budgetary reason was false and that gender discrimination was the real reason for her layoff. See id.

O'Sullivan failed to produce enough evidence to permit a reasonable jury to find the stated reason for her layoff was a pretext for gender discrimination. To support an inference of gender discrimination, O'Sullivan argues she was an aggressive, outspoken advocate for women and the administration was biased against women. O'Sullivan relies on evidence that LSC refused to provide her with reports on where federal grant dollars were spent, that Dr. Erickson called her a troublemaker in December 1994 for trying to secure a pay raise, that the college had no women on its executive committee, that in the fall of 1995 references to the women's resource center were deleted from the student handbook and the gender equity committee was disbanded. O'Sullivan's claims are not serious enough to raise an inference of gender animus. See Johnson, 97 F.3d at 1073. O'Sullivan's inadequate showing of pretext is fatal to both her

discrimination claim and any retaliation claim.  See Kerns v. Capital Graphics, Inc., 178 F.3d 1011, 1019 (8th Cir. 1999) (applying burden-shifting analysis to Title VII retaliation claim).   Because O'Sullivan failed to present sufficient evidence of pretext to sustain a discrimination or retaliation claim, the defendants were entitled to summary judgment on those claims.

We thus affirm the district court, except we remand O'Sullivan's EPA claim for further proceedings.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.